IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

SENETHA MONTGOMERY,

        Plaintiff,

v.                                        CIVIL ACTION NO.   5:11-cv-00714

CREDIT ONE BANK, NA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendant, *Credit One Bank, N.A.'s Motion to Compel Arbitration* (Document 10) together with Plaintiff's Complaint (Document 1 Ex. A), Defendant's supporting memoranda and all written submissions and exhibits relative thereto.

**I.**

On July 25, 2011, Plaintiff, Senetha Montgomery, filed this action in the Circuit Court of Raleigh County, West Virginia, against Credit One Bank, N.A., a Nevada corporation with its principal place of business in Nevada. Plaintiff's Complaint contains three counts based on "not less than one hundred ninety-four (194) calls" placed by Defendant to Plaintiff's cellular phone from February 10, 2011, through June 28, 2011. (Compl. ¶ 7.) Plaintiff alleges that all calls to collect on a debt placed during the relevant time period occurred after notification that Plaintiff revoked Defendant's right to contact her. (Compl. ¶ 6.) Count One asserts a claim for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (2006).   Count Two asserts a claim for violations of the West Virginia Consumer Credit and Protections Act ("WVCCPA"), W.

Va. Code §§ 46A-1-1-2 *et seq.* (2011) and Count Three is based on an allegation of violation of W. Va. Code § 61-3C-14a (2011). This state statute prohibits the making of telephone calls by use of a computer with the intent to harass after being requested by a person to stop contacting them. (Compl.) On October 7, 2011, Defendant properly removed this action to this Court. (Document 1).

On December 23, 2011, Defendant filed its Motion to Compel Arbitration, wherein Defendant argues this Court should compel arbitration because Plaintiff agreed to arbitrate her claims and the arbitration agreement is valid and enforceable. (Document 10 at 4-5). Defendant further argues that all of Plaintiff's claims are subject to the arbitration clause. (*Id*. at 5). Finally, Defendant argues the parties' agreement is not void for unconscionablity. (*Id*. at 5-11). Plaintiff failed to respond to Defendant's Motion to Compel.

## II.

### A. *General Arbitration Law*

The Federal Arbitration Act ("FAA") provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2006). Federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles. *AT&T Mobility LLC v. Concepcion*, ––U.S. ––, 131 S.Ct. 1740, 1745–46, 179 L.Ed.2d 742 (2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Also, the Supreme Court has held

that there is a "fundamental principle that arbitration is a matter of contract." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. ––––, ––––, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). "[C]ourts must put arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Concepcion*, 131 S.Ct. at 1746. (internal citation omitted.) Sections 3 and 4 of the FAA grant federal courts authority to compel arbitration and issue a stay upon the motion of one of the parties to the agreement.

The party who seeks to compel arbitration must establish "(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate." *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir. 1981). Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state. *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). Nevertheless, when determining the scope of a valid arbitration clause, a federal district court is to use the "federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n. 4 (4th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24).

A district court must "engage in a limited review to ensure that the dispute is arbitrable-i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir.1997) (citations and quotation marks omitted). To challenge the validity of an arbitration clause within a contract, a party must specifically challenge the arbitration clause, not just the contract as a whole. *See Buckeye Check Cashing, Inc,* 546 U.S. 440, 445 (2006). The scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring

arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

## *B. Validity and Enforceability of Arbitration Clause*

The Court must first decide if the Parties' Agreement ("Agreement") (Document 10 Ex. A) is valid and enforceable under West Virginia law. The burden is on the Defendant to demonstrate that a valid contract exists. *Mercury Constr. Corp.*, 656 F.2d at 939.

The Agreement states that "Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, . . . or any other legal or equitable ground (including any claim for injunctive or declaratory relief)." (Document 10 Ex. A). The Agreement further states "Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship." (*Id*.) The Parties' arbitration clause defines "Administrator" as "the National Arbitration Forum [NAF], the American Arbitration Association [AAA], or JAMS [Judicial Arbitration and Mediation Services Inc.]." (*Id*.) Both parties are required to submit all claims to arbitration. (*Id*.) Although Plaintiff failed to respond to Defendant's motion, the parties do not appear to dispute that they entered into the Agreement. Thus, the Court moves on to determine if the Agreement is enforceable.

To be enforceable, a contract cannot be unconscionable. Defendant argues that the Agreement is not unconscionable under *Brown v. Genesis Healthcare Corp.*, ___ W.Va. ___, ___,

4

___ S.E.2d ___, ___ (Nos 35494, 35546, 35635, June 29, 2011) and *ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*___ W.Va. ___, ___, ___ S.E.2d ___, ___ (No. 11-0770, Nov. 21, 2011).

Although the West Virginia Supreme Court had touched on the issue of unconscionability, the Court had "never fully explained the principles and application behind unconscionability." *Brown v. Genesis Healthcare Corp.*, ___ W.Va. ___, ___, ___ S.E.2d ___, ___ (Nos. 35494, 35546, 35635, June 29, 2011) (Slip Op. at 2). Thus, in *Brown*, the Court set out a comprehensive discussion of unconscionability under West Virginia law. In *Richmond,* the Court affirmed a lower court ruling that the plaintiffs' homeowner purchase agreements, which contained a mandatory arbitration provision that covered personal injury and wrongful death claims, was unenforceable. The lower court ruling was issued prior to the *Brown* decision, so the Court did not apply Syllabus Point 21 of *Brown*, which would easily have invalidated the arbitration clause.[1] *Richmond*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 15). As the seminal case, *Brown* provides the best framework to address unconscionability under West Virginia law.

"The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 52). "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 54) (citing Syl. pt. 4, *Art's Flower Shop, Inc. v.*

---

[1] "Congress did not intend for arbitration agreements, adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, and which require questions about the negligence be submitted to arbitration, to be governed by the Federal Arbitration Act." Syl. pt. 21, *Brown*.

*Chesapeake and Potomac Telephone Co. of West Virginia, Inc*., 186 W.Va. 613, 413 S.E.2d 670 (1991)). "A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 64). This is to be applied on a sliding scale. *Id*. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *Id*.

Procedural unconscionability addresses the "inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 60). This requires an examination of "a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties." *Id*. A non-exhaustive list of inadequacies includes: "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." *Id*. A finding of procedural unconscionability often involves a contract of adhesion, but this is not always the case. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 57-59). "A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 61). A court should give greater scrutiny to an adhesion contract to determine if "it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person." *Id*.

Substantive unconscionability addresses the "unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." Syl. pt. 19, *Brown*. When examining substantive unconscionability "courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Id*. The burden of proof rests with the party who seeks to establish a contract term is unconscionable. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 55).

In *Brown*, the Court held that "Congress did not intend for arbitration agreements, adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, and which require questions about the negligence be submitted to arbitration, to be governed by the Federal Arbitration Act." *Brown,* ___ W.Va. at ___, ___ S.E.2d at ___ *(Slip Op. at 73)*. The Court examined three consolidated cases that essentially had the same facts. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 3-4). "In each case, a person was ill or incapacitated and needed extensive, ongoing nursing care. The person was admitted to a nursing home, and a family member signed an admission agreement with the nursing home that contained an arbitration clause." *Id*. The arbitration clause required the ill or incapacitated to arbitrate personal injury claims (or any other dispute) that arose from the facility's subsequent actions. *Id*.

The Court finds that the Agreement is a contract of adhesion because it contains boiler-plate language that does not appear to be subject to negotiation. Rather, it appears it was given on a take it or leave it basis. *State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 773, 613 S.E.2d 914, 921 (2005). However, finding a contract of adhesion, alone, does not establish that the contract is procedurally unconscionable. Unlike the facts in *Brown,* where the plaintiffs were

7

each in a medical emergency situation and their representatives had little choice but to immediately accept the terms of the agreement upon their admittance to the nursing home, here, Plaintiff puts forth no pressing need or emergency to enter into the Agreement. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 74-84). Further, in *Brown*, the plaintiffs had little choice but to enter into the agreement if they wanted to receive further medical care and did not appear to have any alternatives. *Id*. Here, Plaintiff puts forth no evidence of a pressing need, and the record is void of any evidence that she had no other alternative but to enter into a credit card agreement with this particular Defendant. Additionally, Plaintiff actually was the party that assented to the agreement, as opposed to the situation in *Brown* where the agreements were entered into by family members on behalf of the plaintiffs. (Slip Op. at 74-84). Plaintiff wholly fails to put forth any evidence that the Agreement was procedurally unconscionable. The Court will also consider if the Agreement was substantively unconscionable.

  The Court finds the Agreement is not substantively unconscionable under West Virginia law. Unlike the arbitration clause in *Brown*, where nursing home residents, through their personal representatives, waived their rights to pursue subsequent personal injury or wrongful death claims in court, here, there is a common consumer credit card arbitration clause. In determining if a term in a contract is substantively unconscionable, courts should generally "consider the commercial reasonableness of the terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Brown,* ___ W.Va. at ___, ___ *S.E.2d at* ___ *(Slip Op. at 63)*. In *Brown*, the court found the nursing home agreement substantively unconscionable for several reasons. First, the court found there was no "modicum of bilaterality" because the nursing home could pursue payments and discharges in any forum it

8

chose, while the plaintiff was limited to arbitrating all of his claims. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 77). Second, nothing in the nursing home agreement allowed the residents to reject or opt out of the arbitration clause. *Id.* Third, the court found the fees associated with filing an arbitration claim "in the context of an action for negligence by a nursing home was an unconscionable bar to relief." *Id.* at 77-78. Fourth, the court found the arbitration clause was not commercially reasonable because it was "beyond the reasonable expectations of an ordinary person." *Id.* at 78. The determination that the term was commercially unreasonable was made in part because the court found it clearly violated West Virginia's public policy "that nursing homes are not to require residents to sign agreements that waive the right to commence a civil action, a right that is preserved in the West Virginia Constitution." *Id.* at 78-79. *See* Section 15(c) of West Virginia's Nursing Home Act, W.Va. Code §§ 16-5C-1 to -20. Furthermore, *Brown* has several stark differences from the instant case. Unlike the clause in *Brown*, there is a "modicum of bilaterality" here because both parties must submit all of their claims to arbitration. The Court finds that Plaintiff wholly fails to put forth any evidence that the Agreement was substantively unconscionable. Therefore, the Plaintiff having failed to demonstrate that any aspect of the arbitration clause is either procedurally or substantively unconscionable, the Court finds that the Agreement is valid and enforceable under West Virginia law.

## C. *Scope of Arbitration Agreement*

In light of the Court's finding that the parties entered a valid and enforceable agreement, the Court must now decide whether the dispute in the instant case falls within substantive scope of the Agreement. *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir.1997) (citations and quotation marks omitted). The Agreement's broad arbitration clause seems to cover almost any

9

conceivable dispute that could arise from interactions between the parties. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Questions concerning the scope of an arbitration clause are to be left to the arbitrator, "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Winston-Salem Mailers Union 133, CWA v. Media Gen. Operations, Inc.*, 55 Fed. Appx. 128, 133 (4th Cir. 2003) (quoting *AT & T Technologies, Inc. v. CWA*, 475 U.S. 643, 649-50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The court, in *Winston-Salem,* enunciated the standard the Court should use in deciding whether the party's claims fall within the substantive scope of the Agreement as required by *Glass*. In essence, the Court should find that a party's claims fall within the scope of the arbitration clause, unless the Court finds the arbitration clause cannot possibly be interpreted to cover the claims at issue. This, however, does not prevent an arbitrator from later finding that a party's claims are beyond the scope of an arbitration clause because the arbitrator is tasked with ultimately deciding the specific scope of an arbitration clause.

Defendant submits that Plaintiff "asserted various statutory claims arising out of Credit One's alleged unlawful attempt to collect a debt in connection with the Account in question." (Document 10 at 5). Furthermore, Defendant contends that the Agreement provides that "any questions about what claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." (*Id*.) (citing Document 10 Ex. A). The Court finds that Plaintiff's claims are not beyond the scope of the Agreement because the Court cannot find "with positive assurance that the arbitration clause is not

10

susceptible of an interpretation that covers the asserted dispute." *Winston-Salem,* 55 Fed. Appx. at 133. The Court makes this finding considering that the scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ*., 489 U.S. 468, 475-76 (1989)). In summary, the Court finds that the Plaintiff's claims are arbitrable because the claims are within the scope of a valid and legally enforceable agreement and because it cannot be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the Plaintiff's claims.

## CONCLUSION

WHEREFORE, as discussed herein, the Court does hereby **ORDER** that Defendant, *Credit One Bank, N.A.'s Motion to Compel Arbitration* (Document 10) be **GRANTED,** and Plaintiff's claims are hereby **REFERRED** to arbitration in accordance with the terms of the contract and the Federal Arbitration Act. Finally, the Court **ORDERS** that this action be **STAYED** pending resolution of arbitration and **REMOVED** from the Court's active docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: January 31, 2012

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA